**NnIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | ) | |
| 7233 East Butherus Drive | ) | |
| Scottsdale, AZ 85260 | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | **DECLARATORY JUDGMENT** |
| | ) | **COMPLAINT AND RESCISSION** |
| v. | ) | |
| | ) | |
| NUESTRA CASA LLC d/b/a NUESTRA CASA | ) | |
| & RESTAURANT | ) | |
| 195 Ferry St | ) | |
| Newark NJ 07105 | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| MIGUEL MULLO QUIROZ | ) | |
| 95 Bruen Street, Apartment 3 | ) | |
| Newark, NJ 07105 | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| JHOFFRE LEMA ALLAICA | ) | |
| 18 Shanley Avenue | ) | |
| Newark, NJ 07108 | ) | |
| | ) | |
| Defendants, | | |

## COMPLAINT FOR RESCISSION OR, IN THE ALTERNATIVE REFORMATION AND DECLARATORY JUDGMENT

Plaintiff Nautilus Insurance Company ("Nautilus"), by and through its undersigned counsel, brings this action for rescission or, in the alternative, for reformation and declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and in support of the relief sought herein avers as follows:

**I.    INTRODUCTION AND SUMMARY OF CLAIMS**

1.    Before the Court is Nautilus's Complaint for rescission or, in the alternative, reformation and declaratory judgment with respect to defense and indemnity, if any, owed to its

named insured, Nuestra Casa, LLC, in an underlying bodily injury action (the "Underlying Action") under two policies of insurance issued by Nautilus to Nuestra Casa (the "Nautilus Policies").

2.     That Underlying Action is captioned *Miguel Mullo Quiroz and Jhoffre Lema Allaica v. Nuestra Castra Bar & Restaurant et al.*, venued in the Superior Court of New Jersey, Essex County, docket number ESX L-004013-24.

3.     A true and correct copy of the of the civil complaint in the Underlying Action (the "Underlying Complaint") is attached hereto as **Exhibit "A."**

4.     The Nautilus Policies were issued to Nuestra Casa based upon its representations in an application for said insurance (the "Application"), which, upon information and belief, contains several material (and intentional) misrepresentations pertaining to, among other things, Nuestra Casa's gross revenue, the portion of its total sales derived from alcohol and whether the premises contain a dance floor.  A true and correct copy of the Application is attached hereto as **Exhibit "B."**

5.     Nautilus reasonably relied upon Nuestra Casa and/or its agents intentional, material misrepresentations in the Application in issuing the Nautilus Policies to Nuestra Casa.

6.     Nautilus priced the annual premiums for those policies of insurance based upon, in part, Nuestra Casa's representations in the Application.

7.     Nautilus's subsequent investigation into the allegations contained in the Underlying Action revealed that contrary to the representations made by Nuestra Casa and/or its agents in the Application, those representations were materially false, and went to the heart of the insured risk – the business premises and operation(s) of Nuestra Casa.

2

8.      Had Nuestra Casa's representations in the Application been truthful, the Nautilus Policies would not have been issued at all and/or the Application would have been considered under a different classification code that would have resulted in an annual premium approximately six times greater than the actual premium paid by Nuestra Casa for the Nautilus Policies, and/or the Nautilus Policies would have included different terms and conditions, including exclusions and/or endorsements which would have barred or limited coverage for the allegations in the Underlying Action.

9.      This Complaint contains four (4) counts: Count I for Rescission, Count II for Reformation (in the alternative), Count III for Declaratory Judgment (in the alternative related to the defense of Nuestra Casa in the Underlying Action) and Count IV for Declaratory Judgment (in the alternative related to indemnity for Nuestra Casa in the Underlying Action).

10.     With respect to Count I, specifically, Nautilus requests that this Honorable Court rescind the Nautilus Policies based upon Nautilus's reasonable reliance upon Nuestra Casa and/or its agents' material misrepresentations in the Application.  Accordingly, Nautilus asks this Court to declare that the Nautilus Policies are void *ab initio*, and that Nautilus may therefore rescind the Nautilus Policies.

11.     With respect to Count II, in the alternative, Nautilus requests that this Honorable Court reform the Nautilus Policies if it will not rescind them by including an assault and battery exclusion (form L210), which would have excluded or limited coverage for the Underlying Action – as well as the other terms/forms discussed below.

12.     With respect to Count III for declaratory judgment, Nautilus requests that this Honorable Court declare that Nautilus has no duty to defend Nuestra Casa in the Underlying

Action due to the terms and conditions of the Nautilus Policies, including but not limited to endorsement S009 (04/16), "Exclusion – Total Liquor Liability."

13.     Finally, with respect to Count IV for declaratory judgment, Nautilus requests that this Honorable Court declare that Nautilus has no duty to indemnify Nuestra Casa in the Underlying Action due to the terms and conditions of the Nautilus Policies, including but not limited to endorsement S009 (04/16), "Exclusion – Total Liquor Liability."

14.     Thus, collectively, Nautilus seeks declarations that it has no duty to defend or indemnify Nuestra Casa for the claims and damages asserted against Nuestra Casa in the Underlying Action involving defendants Miguel Mullo Quiroz and Jhoffre Lema Allaica as plaintiffs each of whom allege, in pertinent part, that defendant Nuestra Casa served an excessive amount of alcoholic beverages to its patron(s) and/or employee(s), which in turn led to defendants Miguel Mullo Quiroz and Jhoffre Lema Allaica being physically assaulted on the premises (the "Loss").

15.     Pending this Court's determination of this complaint, Nautilus has offered to defend Nuestra Casa in the Underlying Action subject to a reservation of rights, which defense has been accepted by Nuestra Casa.

## II.    **THE PARTIES**

16.     Plaintiff, Nautilus, is an eligible surplus lines insurer whose policies are sold and delivered in the State of New Jersey, is incorporated in the State of Arizona, and which maintains its principal place of business in Arizona.

17.     Upon information and belief, defendant, Nuestra Casa, is a New Jersey limited liability company which maintains its principal place of business in the State of New Jersey.

18.     Upon information and belief, all members of defendant, Nuestra Casa are citizens of the State of New Jersey.

4

19.    Upon information and belief, defendant, Miguel Mullo Quiroz ("Quiroz") is a real person who resides at 95 Bruen Street, Apartment 3, Newark, NJ 07105.

20.    Upon information and belief, defendant, Jhoffre Lema Allaica ("Allaica") is a real person who resides at 18 Shanley Avenue, Newark, NJ 07108.

21.    Quiroz and Allaica are named as interested parties, given that they are the plaintiffs suing Nuestra Case in the Underlying Action.

## III.    <u>JURISDICTION</u>

22.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the dispute in this action is between citizens of different states.

23.    The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, because the limits of the Nautilus Policies exceed $75,000.00.

24.    The dispute in this action is between citizens of different states.

25.    Plaintiff Nautilus is a citizen of Arizona.

26.    Upon information and belief, Nuestra Casa is a citizen of New Jersey as all of its members are citizens of the State of New Jersey.

27.    Upon further information and belief, no member of Nuestra Casa is a citizen of Arizona.

28.    Upon information and belief, both Quiroz and Allaica are citizens of New Jersey.

29.    There is complete diversity between Nautilus, on the one hand, and the Defendants on the other.

30.     The Court also has jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this action presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

## IV.    VENUE

31.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

32.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside and/or maintain their principal place of business within New Jersey.

33.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in the District of New Jersey – in that (a) the Nautilus Policies were issued to Nuestra Casa within the District of New Jersey, (b) the underlying incidents giving rise to this action occurred in the District of New Jersey, and (c) the Underlying Action giving rise to this action is currently pending in Superior Court of New Jersey, Essex County, which is encompassed by the District of New Jersey.

## V.    FACTUAL BACKGROUND

### A.    Nuestra Casa's Application For The Nautilus Policies

34.     Nautilus only issued the Nautilus Policies as-is based upon certain critical information contained in the Application signed by Nuestra Casa's owner(s)/agent(s) including, but not limited to, its representation that Nuestra Casa did not have a dance floor on the premises and that its alcohol sales are less than 30% of total gross receipts.

35.     On or about February 24, 2022, Nuestra Casa prepared an Acord Commercial Insurance Application (the "Application") requesting commercial general liability and commercial property insurance coverage for the proposed policy period of March 1, 2022 to March 1, 2023.

36.    The Application represented to Nautilus that Nuestra Casa is a limited liability company located at 195 Ferry Street, Newark, NJ 07105 (the "Premises") which operates as a "Restaurant/Tavern.":

| CONTACT INFORMATION | | | | AGENCY CUSTOMER ID: NUEST-1 | | | OP ID: GF |
|---|---|---|---|---|---|---|---|
| CONTACT TYPE: | | | | CONTACT TYPE: | | | |
| CONTACT NAME: GLADYS SIGUENCIA | | | | CONTACT NAME: GLADYS SIGUENCIA | | | |
| PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL | | PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL | |
| PRIMARY E-MAIL ADDRESS: | | | | PRIMARY E-MAIL ADDRESS: | | | |
| SECONDARY E-MAIL ADDRESS: | | | | SECONDARY E-MAIL ADDRESS: | | | |
| PREMISES INFORMATION (Attach ACORD 823 for Additional Premises) | | | | | | | |
| LOC # 001 | STREET 195 FERRY ST | | CITY LIMITS | INTEREST | # FULL TIME EMPL | ANNUAL REVENUES: $ | 425,000 |
| | | | INSIDE | OWNER | | OCCUPIED AREA: | 900 SQ FT |
| BLD # | CITY: NEWARK | STATE: NJ | OUTSIDE | TENANT | # PART TIME EMPL | OPEN TO PUBLIC AREA: | SQ FT |
| | COUNTY: UNION | ZIP: 07105 | | | | TOTAL BUILDING AREA: | SQ FT |
| DESCRIPTION OF OPERATIONS: RESTAURANT/TAVERN | | | | | | ANY AREA LEASED TO OTHERS? Y / N | |

Ex. B, Nues162.

37.    Upon information and belief, Nuestra Casa and/or its agents made multiple false, intentional misrepresentations of fact, which Nautilus in turn reasonably relied upon in issuing the Nautilus Policies to Nuestra Casa as-is.

38.    First, the Application represented to Nautilus that the Premises occupied an area of "900 sq. ft." and annual revenue was $425,000. *Id.*

39.    The Application further represents that of the self-reported $425,000 per year in gross income Nuestra Casa generates, $100,000 of that comes from liquor sales and $325,000 in food sales:

**GENERAL INFORMATION**

1. Number of years in business? >10 yrs.    At this location? >10 yrs.
   If new, describe prior experience: NA

2. Gross Sales:    Total $ 425,000    Catering ___O___
                   Food $ 325,000     Delivery (fast food) ___O___
                   Liquor $ 100,000   Street Fairs ___O___

3. Total Number of Employees    Full Time 3    Part Time O
   Servers                      Full Time ___    Part Time ___
   Bartenders                   Full Time 1    Part Time ___

Ex. B, Nues173.

40.     The Commercial General Liability Section to the Application rates the Premium Basis for the Premises as code "S.":

### SCHEDULE OF HAZARDS

| LOC # | HAZ # | CLASSIFICATION | Class CODE | PREMIUM BASIS | EXPOSURE | TERR | RATE | | PREMIUM | |
| | | | | | | | PREM/OPS | PRODUCTS | PREM/OPS | PRODUCTS |
| 1 | | restaurant/bar | | S | 425000 | | | | | |
| 1 | | | | | | | | | | |

Ex. B, Nues166.

41.     Code "S" is in turn defined as "Gross Sales – Per $1,000/Sales.":

| RATING AND PREMIUM BASIS | (P) payroll - per $1,000/pay | (C) TOTAL COST - PER $1,000/COST | (U) unit - per unit |
| (S) GROSS SALES - PER $1,000/SALES | (A) area - per 1,000/sq ft | (M) admissions - per 1,000/adm | (T) OTHER |

*Id.*

42.     In other words, the annual premium Nautilus charged Nuestra Casa is tied directly, in part, to Nuestra Casa total, annual self-reported sales, and what portion of those sales are derived from the sale of alcohol versus food.

43.     Subsequent investigation relating to the Underlying Action has revealed not only that the physical space occupied by Nuestra Casa is substantially larger than 900 square feet, and that Nuestra Casa derives a substantially greater ratio of its gross sales from alcohol than represented on the Application, but that its total sales are substantially larger than represented.

44.     Second, the Application also indicated that Nuestra Casa has a DJ, but does not have a dance floor, employs no bouncers, and is not a night club:

### ACTIVITIES AND ENTERTAINMENT

1. Any entertainment provided?........................................................... ☒ Yes ☐ No
   If yes, describe. ___ DJ ___
2. List the number for each:     Pool Tables _____     Dart Boards _____
                                 Video Games _____     Other ___ DJ ___
3. Is there a dance floor?.............................................................. ☐ Yes ☒ No
   If yes, provide dimensions and type of dancing. _____
4. Any firearms kept on premises?.................................................... ☐ Yes ☒ No
   If yes, decline.
5. Are bouncers employed?............................................................. ☐ Yes ☒ No
6. Are employees trained for evacuation? .......................................... ☒ Yes ☒ No
   Number of means of egress? _____     Street Level? _____
7. Night Clubs or related risks – Clientele by age: ......21-25 ___ 26-30 ___ 30-40 ___ over 40 ___
   Any pyrotechnics of any type?.................................................... ☐ Yes ☐ No
   Pyrotechnics with entertainers?................................................. ☐ Yes ☐ No
   GERBS (A professional term for a fountain-style effect that produces a spray of bright sparks.)?.......... ☐ Yes ☐ No

Ex. B, Nues174.

45.    Interestingly, that form also states that the applicant, Nuestra Casa, had previously had insurance canceled or non-renewed due to: "States bottle service; insured stated no.":

Has the applicant been cancelled or non-renewed in the last three years? ................................ ☒ Yes ☐ No

If yes, Explain.    _States    Bottle    Service , insured_
    _stated    no._

Ex. B, Nues176.

46.    The Application was signed Gorete Ferreira on or about March 2, 2022 and subsequently submitted to underwriting for consideration.  Ex. B, Nues161, 178.

47.    Upon information and belief, those representations discussed above were false and were material to the insured risk, Nautilus's underwriting, pricing, and issuance of the Nautilus Policies.

48.    As discussed in greater detail below, had Nuestra Casa been truthful and accurate in its responses on the Application, Nautilus would have priced the premiums on the Nautilus Policies significantly higher and would have included certain exclusions and endorsements germane to the instant loss, which were not included due to those deliberate and material misrepresentations, and/or would not have issued the Nautilus Policies at all.

49.    Nautilus generated a quote of insurance for Nuestra Casa based upon the representations in the Application (the "Quote").  A copy of that quote is attached hereto as **Exhibit "C."**

50.    The Quote for 2022-2023 Policy fixed premium for the year at $5,093 based upon Nuestra Casa's representations in the Application, and that premium was in turn premised upon classification code "16911" which is defined as "Restaurants with sales of alcoholic beverages less

than 30% of total annual receipts without table service with seating" and premium basis "S" based upon the representation of gross receipts amounting to $425,000:

**QUOTE - COMMERCIAL GENERAL LIABILITY**

| General Liability Limits of Insurance | | Deductible | | |
|---|---|---|---|---|
| General Aggregate | $2,000,000 | $500 | BI/PD Combined | Per Claim |
| Products / Completed Operations Aggregate | $2,000,000 | | | |
| Personal & Advertising Injury (any one person or organization) | $1,000,000 | | | |
| Each Occurrence | $1,000,000 | | | |
| Damage to Premises Rented to You (any one premises) | $100,000 | | | |
| Medical Expenses (any one person) | $5,000 | | | |

| Code | Classification Description | Premium Basis | Exposure | Prem / Ops Rate | Prod / Comp Ops Rate | Premium |
|---|---|---|---|---|---|---|
| 16911 | Restaurants with sales of alcoholic beverages less than 30% of total annual receipts without table service with seating | s | 425,000 | 11.983 | | $5,093.00 |

Ex. C, Nues026.

51.    Similarly, the 2023-2024 Policy fixed premiums for the year based upon Nuestra Casa's representations in the Application, and that premium was in turn premised upon classification code "16911" which is defined as "Restaurants with sales of alcoholic beverages less than 30% of total annual receipts without table service with seating" and premium basis "S."  A copy of the 2023-2024 Policy's renewal notice is attached hereto as **Exhibit "D."**

     **B.**     **The Nautilus Policies**

52.    Based upon Nuestra Casa's representations in the Application, Nautilus issued two commercial lines insurance policies to its named insured, Defendant Nuestra Casa LLC d/b/a Nuestra Casa Bar & Restaurant ("Nuestra Casa"):  (a) Policy NN1374684 for the policy period March 2, 2022 to March 2, 2023 (the "2022-2023 Policy"), and (b) Policy NN1491709 for the policy period March 2, 2023 to March 2, 2024 (the "2023-2024 Policy") (the 2022-2023 Policy and 2023-2024 Policy are collectively referenced throughout as the "Nautilus Policies").

53.    A true and correct copy of the 2022-2023 Policy is attached hereto as **Exhibit "E."**

54.    A true and correct copy of the 2023-2024 Policy is attached hereto as **Exhibit "F."**

55.    The Nautilus Policies contain several coverage parts including a commercial general liability coverage part (the "CGL Coverage Part") and a commercial property coverage part.  *See* Ex. E, 2022-2023 Policy 003; Ex. F, 2023-2024 Policy 003.

56.    The Nautilus Policies provides certain commercial general liability coverage subject to liability limits of $1,000,000 per occurrence and a $2,000,000 general aggregate.  *See* Ex. E, 2022-2023 Policy 013; Ex. F, 2023-2024 Policy 013.

57.    Pursuant to the Nautilus Policies' Deductible Liability insurance (Including Allocated Loss Adjustment Expense) endorsement, L850 (05/09), Nautilus's obligation under the Bodily Injury Liability and Property Damage Liability Coverages of the Nautilus Policies to pay damages on Nuestra Casa's behalf applies only to the amount of damages in excess of its deductible which is $500 per liability claim.  *See* Ex. E, 2022-2023 Policy 064; Ex. F, 2023-2024 Policy 064.

58.    The Insuring Agreement of SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the CGL Coverage Part (CG 00 01 04 13) of the Nautilus Policies provides, in pertinent part:

    **1. Insuring Agreement**

        **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

          **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

          **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or

settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

*See* Ex. E, 2022-2023 Policy 014; Ex. F, 2023-2024 Policy 014.

59.    The CGL Coverage Part of the Nautilus Policies defines "bodily injury" and "occurrence" to mean:

**3.** "Bodily injury" means bodily injury, sickness or dis-ease sustained by a person, including death resulting from any of these at any time.

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*See* Ex. E, 2022-2023 Policy 026-028; Ex. F, 2023-2024 Policy 026-028.

60.    The coverage afforded under the CGL Coverage Part of the Nautilus Policies is limited by certain exclusions and endorsements, including endorsement S009 (04/16), "Exclusion – Total Liquor Liability", which replaces entirely exclusion **c. Liquor Liability** under **Paragraph**

**2**., **Exclusions** of **Section I - Coverage A. - Bodily Injury and Property Damage Liability**, with the following:

> This insurance does not apply to:

> **c. Liquor Liability**

>> "Bodily injury" or "property damage" for which any insured or his indemnitee may be held liable by reason of:

>> **(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

>> **(1)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

>> **(2)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

>> This exclusion applies even if the claims against any insured or his indemnitee allege negligence or other wrongdoing in:

>>> **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

>>> **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

>> if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

> All other terms and conditions remain unchanged.

*See* Ex. E, 2022-2023 Policy 066; Ex. F, 2023-2024 Policy 068.

61.    Further, the Nautilus Policies contain an endorsement L217 (06/17), "Exclusion – Punitive or Exemplary Damages", which provides that the insurance does not apply to:

> punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in a similar behavior.

*See* Ex. E, 2022-2023 Policy 037; Ex. F, 2023-2024 Policy 037.

The CGL Coverage Part of the Nautilus Policies defines "suit", in pertinent part, to mean "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged".  *See* Ex. E, 2022-2023 Policy 029; Ex. F, 2023-2024 Policy 029.

62.     As used in the Nautilus Policies, the word "you" means the Named Insured shown in the Declarations -- Nuestra Casa, and any other person or organization qualifying as a Named Insured under the Nautilus Policies.  *See* Ex. E, 2022-2023 Policy 014; Ex. F, 2023-2024 Policy 014.

63.     The Nautilus Policies' Commercial General Liability Coverage Part Declarations Business Description and Location of Premises states: "Restaurants, Delicatessen" and "195 Ferry Street, Newark, NJ 07105."  *See* Ex. E, 2022-2023 Policy 013; Ex. F, 2023-2024 Policy 013.

64.     As described above, a grid with the "classification" code notes the code number "16911" and a "classification" which states: "Restaurants - with sale of alcoholic beverages that are less than 30% of the annual receipts of the restaurants - without table service with seating".  *Id.*

*65.*     Directly across from that information (in the foregoing paragraph) is premium pricing information related to that portion of the policy.  *Id.*

66.     In other words, the Nautilus Policies were written and priced with Nuestra Casa, its agent's, and/or its accountant's representation(s) that Nuestra Casa is a restaurant/delicatessen with "sale[s] of alcoholic beverages that are less 30% of the annual receipts of the restaurant[.]"  *See id.*

C. <u>**Nautilus's General Liability Audit**</u>

67. On March 2, 2023, after the 2022-2023 Policy was issued, but before it was set to renew, Nautilus sent Nuestra Casa a General Liability Audit form to be completed by March 23, 2023 (the "Audit Form").

68. The Audit Form was filled out on Nuestra Casa's behalf by its accountant, Donald Poe. A signed, filled out copy of the Audit Form is attached hereto as **Exhibit "G."**

69. According to the signed and dated Audit Form, the description of operations is a Latin-style bar and restaurant with less than 30% of its sales deriving from alcohol:

**BUSINESS INFORMATION**

a) Description of Operations (attach separate page if needed):

> *Bar & Restaurant – Latin Style Cuisine less That 20% liquor sales.*

Ex. G. Nues193.

70. According to the signed and dated Audit Form, Nuestra Casa's gross sales were $870,383 – more than double the $425,000 self-reported on the Application to the Nautilus Policy:

Amount of Classification

| Class Code | Location Address | Classification Description | Premium Basis | ENTER ACTUAL GROSS AMOUNT FOR POLICY PERIOD |
|---|---|---|---|---|
| 16911 | 195 FERRY ST | Restaurants with sales of alcoholic beverages less 30% of total annual receipts without table service rated as N | Gross Sales | $870,383.00 |

Ex. G. Nues194.

71. Further, the "Class Code" indicated with respect to the Premises is code "16911" which is described as restaurants with sales of alcoholic beverages less than 30% of total annual receipts. *Id.*

72.     Based upon Nuestra Casa, its agent's, and/or its accountant's representation(s) that Nuestra Casa is a restaurant/delicatessen with "sale[s] of alcoholic beverages that are less 30% of the annual receipts of the restaurant[,]" Nautilus priced its premiums for coverage under the Nautilus Policies accordingly based upon that representation.

        **D.**    **The Underlying Action**

73.     The Underlying Complaint in the Underlying Action was filed on or about June 11, 2024.

74.     According to the Underlying Complaint, "[o]n or about September 25, 2022, plaintiffs, Miguel Mullo Quiroz and Jhoffre Lema Allaica were lawfully on the premises of defendant, Nuestra Casa Bar & Restaurant, located at 195 Ferry Street in the City of Newark, County of Essex and State of New Jersey."  "At the time and place aforesaid, the defendants, 'JOHN DOE 1-5' negligently and/or carelessly struck plaintiffs, Miguel Mullo Quiroz and Jhoffre Lema Allaica with a glass bottle causing plaintiffs to sustain severe personal injuries and other diverse damages."  Ex. A, ¶¶ 1, 3.

75.     Allegedly, "'JOHN DOE #1-5' were patrons and/or agents, servants and/or employees of defendant, Nuestra Casa Bar & Restaurant."  Ex. A, at ¶ 3.[1]

76.     Although the Underlying Complaint contains four (4) counts total, only three (3) of those counts are pled against Nuestra Casa.

77.     Count I of the Underlying Complaint alleges "the defendants, 'JOHN DOE 1-5' negligently and/or carelessly struck plaintiffs, Miguel Mullo Quiroz and Jhoffre Lema Allaica with a glass bottle causing plaintiffs to sustain severe personal injuries and other diverse damages. The attack by defendants, 'JOHN DOE #1-5' upon plaintiffs was unprovoked by plaintiffs and was

---

[1] The Underlying Complaint erroneously contains two paragraph "3"s.

made with negligent and careless disregard on the part of the defendants to severely injure and maim plaintiffs." Ex. A, ¶¶ 3-4.

78.     Count II of the Underlying Complaint alleges "Defendants, Nuestra Casa Bar & Restaurant, 'ABC' Bar and/or 'DEF' Bar and/or 'GHI' Bar (names being fictitious as true identities are unknown), were authorized to do business in the State of New Jersey and were the owners, holders and/or licensees of a liquor license where alcoholic beverages were sold." "On or about September 25, 2022, the defendants, 'JOHN DOE #1-5' (names being fictitious as true identities are unknown), indulged in the drinking of alcoholic beverages at defendants, Nuestra Casa Bar & Restaurant, 'ABC' Bar and/or 'DEF' Bar and/or 'GHI' Bar (names being fictitious). Said alcoholic beverages were sold and served to the defendants, 'JOHN DOE #1-5' by agents, servants and/or employees of defendant, Nuestra Casa Bar & Restaurant, 'ABC' Bar and/or 'DEF' Bar and/or 'GHI' Bar (names being fictitious)." Ex. A, Count II, ¶¶ 2-3.

79.     Count II of the Underlying Complaint further alleges "[t]he defendant, Nuestra Casa Bar & Restaurant . . . illegally, unlawfully, negligently and carelessly caused, and permitted defendants, 'JOHN DOE #1-5' to become visibly intoxicated while on their premises[]" and "[t]he sale and service of the alcoholic beverages to the defendants, 'JOHN DOE #1-5' as stated aforesaid, made them become a danger to others, rendered them unable to exercise self-protective care and/or self-control, rendered them to be intoxicated, which directly and proximately caused the plaintiffs to sustain serious and permanent injuries." Ex. A, Count II, ¶¶ 4-5.

80.     "The negligence of defendant, Nuestra Casa Bar & Restaurant . . . consisted of . . . [s]erving intoxicating beverages to defendants, 'JOHN DOE #1-5' when its agents, servants, or employees knew or had reason to know that defendants, 'JOHN DOE #1-5,' had become or were likely to have become visibly intoxicated and a danger to others . . . [and] [p]ermitting defendants,

'JOHN DOE #1-5' to remain on the subject premises after they had become visibly intoxicated making them a danger to others and rendering him unable to exercise self-protective care and/or self control . . . ."  Ex. A, Count II, ¶ 6.

81.    Count III of the Underlying Complaint does not appear to be pled against Nuestra Casa, but rather appears to be pled against the John Doe assailants.  Count III of the Underlying Complaint alleges "Defendants, 'JOHN DOE #1-5' (names being fictitious as true identities are unknown), willfully and intentionally assaulted plaintiffs, Miguel Mullo Quiroz and Jhoffre Lema Allaica."  Ex. A, Count III, ¶ 2.

82.    Count IV of the Underlying Complaint alleges "Defendants, Nuestra Casa Bar & Restaurant, 'ABC' Bar and/or 'DEF' Bar and/or 'GHI' Bar (names being fictitious) disregard of safety for the plaintiff and other patrons was willful and wanton. By reason of this willful and wanton conduct, the plaintiffs, were caused to sustain serious and permanent injuries."  Ex. A, Count IV, ¶¶ 2-3.  Count IV of the Complaint demands punitive damages against Nuestra Casa.

   **E.    Nautilus's Defense Of Nuestra Casa In The Underlying Action And Efforts To Obtain Nuestra Casa's Cooperation**

83.    Nautilus first became aware of the Underlying Action and its complaint on July 19, 2024.

84.    Nautilus's subsequent investigation into the allegations contained in the Underlying Complaint, in particular, social media postings, revealed that contrary to the representations made by Nuestra Casa and/or its agents in the Application, the Premises serves as a club, has alcohol sales exceeding 30% of gross receipts, and contains a dance floor.

85.    Had Nuestra Casa's representations in the Application been truthful and Nuestra Casa's full scope of operations disclosed on the Application, the Application would have been considered under a different classification code that would have resulted in annual premium

approximately six times greater than the actual premium premised upon classification code 16911, or the Nautilus Policies would not have been written at all.

86. Similarly, while Nautilus will consider general liability coverage for *some* nightclub risks, Nautilus will <u>not</u> write policies for after-hour clubs. Had the Application disclosed that Nuestra Club operated as a nightclub past 2 a.m., the account would have been declined and the Nautilus Policies would not have been issued to Nuestra Casa at all.

87. If, however, Nuestra Casa did not close after 2 a.m., it could potentially have been considered by Nautilus for general liability coverage, but at a higher rate and with different terms, including an assault and battery exclusion (L210), which would have excluded or limited coverage for the Loss.

88. On or about August 20, 2024, subject to the terms and conditions of the Nautilus Policies, Nautilus assumed the defense of Nuestra Casa in the Underlying Action subject to a full reservation of its rights under the Nautilus Policies and applicable law.

89. A copy of that reservation of rights letter is attached hereto as **Exhibit "H."**

## <u>COUNT I – RESCISSION</u>

90. Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

91. As detailed above, Nuestra Casa made multiple false representations of fact in applying for the Nautilus Policies.

92. The Application represented to Nautilus that the Premises occupied an area of "900 sq. ft." and annual revenue was $425,000. *Id.*

93. The Commercial General Liability Section to the Application rates the Premium Basis for the Premises as code "S.":

| LOC # | HAZ # | CLASSIFICATION | Class CODE | PREMIUM BASIS | EXPOSURE | TERR | RATE | | PREMIUM | |
| | | | | | | | PREM/OPS | PRODUCTS | PREM/OPS | PRODUCTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | restaurant/bar | | S | 425000 | | | | | |
| 1 | | | | | | | | | | |

Ex. B, Nues166.

94.    Code "S" is in turn defined as "Gross Sales – Per $1,000/Sales.":

| RATING AND PREMIUM BASIS | (P) payroll - per $1,000/pay | (C) TOTAL COST - PER $1,000/COST | (U) unit - per unit |
|---|---|---|---|
| (S) GROSS SALES - PER $1,000/SALES | (A) area - per 1,000/sq ft | (M) admissions - per 1,000/adm | (T) OTHER |

*Id.*

95.    Further, as discussed above, the Restaurant / Tavern Application to the Application notes that of the self-reported $425,000 per year in gross income Nuestra Casa generates, $100,000 of that comes from liquor sales and $325,000 in food sales:

**GENERAL INFORMATION**

1. Number of years in business? > 10 yrs.    At this location? > 10 yrs.
   If new, describe prior experience: NA

2. Gross Sales:    Total   $ 425,000    Catering ◯
                   Food    $ 325,000    Delivery (fast food) ◯
                   Liquor  $ 100,000    Street Fairs ◯

3. Total Number of Employees           Full Time 3      Part Time ◯
                   Servers             Full Time ___    Part Time ___
                   Bartenders          Full Time 1      Part Time ___

Ex. B, Nues173.

96.    The Restaurant / Tavern Application to the Application also notes that Nuestra Casa has a DJ, does not have a dance floor, employs no bouncers, and is not a night club:

**ACTIVITIES AND ENTERTAINMENT**

1. Any entertainment provided?.......................................................................... ☒ Yes ☐ No
   If yes, describe. _____ DJ _____

2. List the number for each:   Pool Tables _____   Dart Boards _____
                                Video Games _____   Other _____ DJ _____

3. Is there a dance floor?............................................................................... ☐ Yes ☒ No
   If yes, provide dimensions and type of dancing. _____

4. Any firearms kept on premises?................................................................... ☐ Yes ☒ No
   If yes, decline.

5. Are bouncers employed?............................................................................. ☐ Yes ☒ No

6. Are employees trained for evacuation? ....................................................... ☐ Yes ☒ No
   Number of means of egress? _____   Street Level? _____

7. Night Clubs or related risks – Clientele by age: ..................21-25 _____ 26-30 _____ 30-40 _____ over 40 _____
   Any pyrotechnics of any type? ................................................................... ☐ Yes ☐ No
   Pyrotechnics with entertainers?.................................................................. ☐ Yes ☐ No
   GERBS (A professional term for a fountain-style effect that produces a spray of bright sparks.)? ............... ☐ Yes ☐ No

Ex. B, Nues174.

97.    Interestingly, that form also states that the applicant, Nuestra Casa, had previously
had insurance canceled or non-renewed due to: "States bottle service; insured stated no.":

Has the applicant been cancelled or non-renewed in the last three years? ............................................... ☒ Yes ☐ No
If yes, Explain. _____ States Bottle Service, insured _____
_____ stated no. _____

Ex. B, Nues176.

98.    The Quote for the 2022-2023 Policy fixed premiums for the year at $5,093 based
upon Nuestra Casa's representations in the Application, and that premium was in turn premised
upon classification code "16911" which is defined as "Restaurants with sales of alcoholic
beverages less than 30% of total annual receipts without table service with seating" and premium
basis "S" based upon the representation of gross receipts amounting to $425,000:

**QUOTE - COMMERCIAL GENERAL LIABILITY**

| General Liability Limits of Insurance | | Deductible | | |
|---|---|---|---|---|
| General Aggregate | $2,000,000 | $500 | BI/PD Combined | Per Claim |
| Products / Completed Operations Aggregate | $2,000,000 | | | |
| Personal & Advertising Injury (any one person or organization) | $1,000,000 | | | |
| Each Occurrence | $1,000,000 | | | |
| Damage to Premises Rented to You (any one premises) | $100,000 | | | |
| Medical Expenses (any one person) | $5,000 | | | |

| Code | Classification Description | Premium Basis | Exposure | Prem / Ops Rate | Prod / Comp Ops Rate | Premium |
|---|---|---|---|---|---|---|
| 16911 | Restaurants with sales of alcoholic beverages less than 30% of total annual receipts without table service with seating | s | 425,000 | 11.983 | | $5,093.00 |

Ex. C, Nues026.

99.     Similarly, the 2023-2024 Policy fixed premiums for the year based upon Nuestra Casa's representations in the Application, and that premium was in turn premised upon classification code "16911" which is defined as "Restaurants with sales of alcoholic beverages less than 30% of total annual receipts without table service with seating" and premium basis "S."  Ex. D.

100.     Had Nuestra Casa's representations in the Application been truthful and Nuestra Casa's full scope of operations disclosed on the Application, the Application would have been considered under a different classification code that would have resulted in annual premium approximately six times greater than the annual premiums premised upon classification code 16911.

101.     Similarly, while Nautilus will consider general liability coverage for some nightclub risks, Nautilus will not write policies for after-hour clubs.  Had the Application disclosed that Nuestra Club operated as a nightclub past 2 a.m., the account would have been declined and the Nautilus Policies would not have been issued to Nuestra Casa at all.

102.    If, however, Nuestra Casa did not close after 2 a.m., it could potentially have been considered by Nautilus for general liability coverage, but at a higher rate and with different terms, including an assault and battery exclusion (L210), which would have excluded or limited coverage for the Loss.

103.    In other words, the annual premiums Nuestra Casa paid for the Nautilus Policies were as low as they were, and the Policies did not include certain restrictive endorsements and exclusions which would have been otherwise applicable to the instant loss, based upon Nuestra Casa and/or its agents' representations regarding annual gross sales, what percentage of those gross receipts were derived from alcohol sales, and other relevant information, such as whether or not the Premises operated as a dance hall and/or night club.

104.    Upon information and belief, Nuestra Casa does indeed operate a dance floor and its annual alcohol sales likely significantly exceed 30% of total annual sales.

105.    Accordingly, the Nautilus Policies were priced far too low for Nuestra Casa's actual business as it is operated based upon Nuestra Casa's deliberate misrepresentations in the Application, and may not have been written at all or would have contained an assault and battery exclusion which would have excluded or limited coverage for the Loss.

106.    "In general, a representation by the insured, whether contained in the policy itself or in the application for insurance, will support the forfeiture of the insured's rights under the policy if it (i) is untruthful, (ii) material to the particular risk assumed by the insurer, and (iii) actually and reasonably relied upon by the insurer in the issuance of the policy." *Allstate Ins. Co. v. Meloni*, 98 N.J. Super. 154, 158-59 (App. Div. 1967); *see also Merchants Indem. Corp. of New York v. Eggleston*, 68 N.J. Super. 235, 244 (App. Div. 1961), *affirmed*, 37 N.J. 114 (N.J. 1962).

107.    Moreover, "[a]n insurer is entitled to relief when it relies on incorrect information provided by an insured in an insurance application if the information was material either to the insurer's decision to insure or to the terms of the contract." *Weinstein v. Mutual Ben. Life in Rehabilitation*, 313 N.J. Super. 609, 614 (App. Div. 1998).

108.    Further, New Jersey courts have found statements to be "material" if "[they] would naturally and reasonably influence the judgment of the underwriter in making the contract at all, *or* in estimating the degree or character of the risk, *or* in fixing the rate of premium." *Weinstein*, *supra*, 313 N.J. Super. at 614.

109.    As stated above, upon information and belief, Nuestra Casa knowingly made multiple false representations on the Application, and those misrepresentations were material to the risk being insured by Nautilus as those misrepresentations deliberately misled Nautilus into underpricing the Nautilus Policies as compared to the actual risk it was insuring, which upon information and belief entails a restaurant/bar with a dance floor, whose alcohol sales *exceed* 30% of gross sales receipts.

110.    Further, pursuant to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 6. Representations of the CGL Coverage Part of the Nautilus Policies, by accepting the Nautilus Policies agreed that: a) The statements in the Declarations are accurate and complete; b) Those statements are based upon representations you made to us; and c) We have issued this policy in reliance upon your representations.  *See* Ex. E, 2022-2023 Policy 025-026; Ex. F, 2023-2024 Policy 025-026.

111.    Nautilus reasonably and justifiably relied upon Nuestra Casa's Application, and the misrepresentations made therein, in underwriting and issuing the Nautilus Policies.

112.    As such, under New Jersey law, the Nautilus Policies are void *ab initio*, and Nautilus is entitled to rescind the Nautilus Policies.

113.    Should the Court determine that the Nautilus Policies are void *ab initio*, and that Nautilus may therefore rescind the Nautilus Policies, Nautilus is willing to return to Nuestra Casa the premium paid by Nuestra Casa for the Nautilus Policies.

**WHEREFORE**, Nautilus respectfully requests that the Court enter an Order:

(a)    Declaring that the Nautilus Policies are void *ab initio*, and that Nautilus may therefore rescind the Nautilus Policies based on misrepresentations made by Nuestra Casa in applying for the Nautilus Policies;

(b)    Declare that Nautilus has no duty under the Nautilus Policies to defend or indemnify Nuestra Casa in the Underlying Action;

(c)    Declaring that, because Nautilus has no duty to defend Nuestra Casa in the Underlying Actions, Nautilus is entitled to withdraw its defense of Nuestra Casa in the Underlying Action;

(d)    Ruling that Nautilus is entitled to reimbursement from Nuestra Casa for all fees and costs incurred by Nautilus in defending Nuestra Casa in the Underlying Action and awarding Nautilus all such fees and costs; and

(e)    Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

## COUNT II – REFORMATION
### (in the alternative to Count I)

114.    Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

115.    Should this Honorable Court not rescind the Nautilus Policies as requested in Count I, in the alternative, this Honorable Court should reform the Nautilus Policies to include the L210 "Exclusion – All Assault or Battery" endorsement from inception of the Nautilus Policies.

116.    Reformation is a remedy available to insurers ". . . where one party enters into an agreement on certain terms based on a mistake of fact induced by the other party's misrepresentation." *See Esoldi v. Esoldi*, 930 F. Supp. 1015, 1022-23 (D.N.J 1996) (citing *Weinisch v. Sawyer,* 587 A.2d 615 (N.J. 1991)); *accord Heake v. Atl. Cas. Ins. Co.*, 15 N.J. 475, 481, 105 A.2d 526 (N.J. 1954) (holding reformation is available "only where there is mutual mistake, or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party").

117.    As detailed above, Nuestra Casa made multiple false representations of fact in applying for the Nautilus Policies.

118.    Nautilus reasonably relied upon and was induced to issue the Nautilus Policies to Nuestra Casa based upon the false, fraudulent and/or unconscionable misrepresentations of fact made by Nuestra Casa in the Application.

119.    As described above, due to those misrepresentations in the Application, the Nautilus Policies were priced far too low for Nuestra Casa's actual business operations, and may not have been written at all or would have contained an assault and battery exclusion which would have excluded or limited coverage for the Loss.

120.    More specifically, had Nuestra Casa been truthful in its responses on the Application, and the Nautilus Policies were to be written at all based upon those representations, not only would the annual policy premiums have been substantially more (approximately six times greater than the premium actually quoted), but the Nautilus Policies would also have been written to include the L210 "Exclusion – All Assault or Battery" endorsement.

121.    The L210 "Exclusion – All Assault or Battery" endorsement provides:

A. The following exclusion is **added** to **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability, and Coverage C – Medical Payments**:

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any actual or alleged:

>    **1.** "Assault" or "battery" caused, directly or indirectly, by you, any insured, any person, any entity, or by any means whatsoever; or

>    **2.** Failure to suppress or prevent "assault" or "battery" by you, any insured, any person, any entity, or by any means whatsoever; or

>    **3.** Failure to provide an environment secure from "assault" or "battery"; or

>    **4.** Failure to warn of the dangers of the environment which could contribute to "assault" or "battery"; or

>    **5.** Use of any force to protect persons or property whether or not the "bodily injury", "property damage" or "personal and advertising injury" was intended from the standpoint of you, any insured, or any person, or committed by or at the direction of you, any insured or any person; or

>    **6.** Failure to render or secure medical treatment or care following any "assault" or "battery"; or

>    **7.** Death, including any allegations of wrongful death, arising out of items **1.** through **6.** listed above.

This exclusion applies:

>    **1.** Whether or not any claimed damages occurred at any premises owned or occupied by any insured;

>    **2.** To all causes of action arising out of any "assault" or "battery" including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an "assault" or "battery";

>    **3.** To any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an "assault" or "battery"; and specifically excludes from coverage claims or "suits" for:

>>    **a.** Emotional distress or for loss of society, services, consortium or income; or

     **b.** Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

    **4.** To any obligation to share damages with or repay someone who must pay damages because of the injury.

**B.** Exclusion **a. Expected or Intended Injury of 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

    **a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**C.** We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any "assault" or "battery".

**D.** The following definitions are **added** to **Section V - Definitions:**

    **1.** "Assault" includes but is not limited to sexual assault, physical, written or oral abuse, sexual abuse, human or sex trafficking, intimidation, or any threatened harmful or offensive contact between two or more persons creating an apprehension in a person of immediate or imminent harmful or offensive contact; or an attempt to commit a "battery".

    **2.** "Battery" includes but is not limited to physical abuse, sexual abuse, sexual battery, sexual molestation, hazing, physical altercation; or any harmful or offensive contact to any person, whether direct or indirect, and regardless of intent.

A copy of the L210 "Exclusion – All Assault or Battery" endorsement is attached hereto as **Exhibit "I."**

122.    As detailed above, according to the Underlying Complaint, "[o]n or about September 25, 2022, plaintiffs, Miguel Mullo Quiroz and Jhoffre Lema Allaica were lawfully on the premises of defendant, Nuestra Casa Bar & Restaurant, located at 195 Ferry Street in the City of Newark, County of Essex and State of New Jersey."  "At the time and place aforesaid, the defendants, 'JOHN DOE 1-5' negligently and/or carelessly struck plaintiffs, Miguel Mullo Quiroz and Jhoffre Lema Allaica with a glass bottle causing plaintiffs to sustain severe personal injuries and other diverse damages."  Ex. A, ¶¶ 1, 3.

123.    Thus, upon information and belief, had Nuestra Casa been honest in its responses on the Application, if the Nautilus Policies were to be written at all, they would have included the L210 "Exclusion – All Assault or Battery" endorsement which would have precluded coverage for the Loss.

124.    Accordingly, should this Honorable Court not rescind the Nautilus Policies as requested in Count I, in the alternative, Nautilus requests that this Honorable Court reform the Nautilus Policies to include the L210 "Exclusion – All Assault or Battery" endorsement from inception of the Policies.

125.    Additionally, had the Application truthfully disclosed Nuestra Casa's business and if the Nautilus Policies would have been written at all, they also would have included (a) form L301, entitled "Exclusions - Weapons", (b) form L204, entitled "Exclusion – Unmanned Aircraft, Other Than Unmanned Aircraft, Auto or Watercraft" (in lieu of form L343 which was included in the Nautilus Policies as issued), (c) form S028, entitled "Exclusion – Participants", (d) form S222, entitled "Exclusion – Intellectual Property Rights"), and (e) form S092, entitled "Limitation of Coverage" (which would have been completed with the insured's location address in the premises section, and the project/operation section left blank).  Copies of each of these forms are attached hereto collectively at **Exhibit "J."**

**WHEREFORE**, in the event that the Nautilus Policies are not rescinded *ab initio*, Nautilus respectfully requests that the Court enter an Order:

> (a) Declaring that Nautilus the Nautilus Policies are reformed such that forms L210 (the "Exclusion – All Assault or Battery" endorsement), form L301 (the "Exclusions - Weapons" endorsement), form L204 the "Exclusion – Unmanned Aircraft, Other Than Unmanned Aircraft, Auto or Watercraft" endorsement, form S028 (the "Exclusion – Participants" endorsement), form S222 (the "Exclusion – Intellectual Property Rights" endorsement) and form S092 (the "Limitation of Coverage" -- completed with the insured's location address in the premises section, and the project/operation section left blank) are each added to the Nautilus Policies from their inception;

(b) Declaring that form L343 which was included in the Nautilus Policies as issued is deleted from the Nautilus Policies ab initio (and replaced by form L204, as noted above);

(c) Declaring that the premium for the Nautilus Policies shall be increased to the amount that Nautilus would have charged had the Application property disclosed the nature of the risk being insured and the additional terms of the Nautilus Policies; and

(d) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT
**(In the Alternative, Nautilus Has No Duty To Defend Nuestra Casa In The Underlying Action)**

126.    Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

127.    Furthermore, as described above, the Nautilus Policies contain an endorsement S009 (04/16), "Exclusion – Total Liquor Liability", which precludes coverage under the Nautilus Policies for "bodily injury" for which any insured or his indemnitee may be held liable by reason of causing or contributing to the intoxication of any person. *See* Ex. E, 2022-2023 Policy 066; Ex. F, 2023-2024 Policy 068.

128.    The Underlying Complaint alleges that unknown defendants "indulged in the drinking of alcoholic beverages" and that "[s]aid alcoholic beverages were sold and served" to those unknown defendants "by agents, servants and/or employees of defendant, Nuestra Casa Bar & Restaurant," and that those unknown defendants then assaulted the underlying plaintiffs. *See* Ex. A at ¶¶ 3-5.

129.    The Underlying Complaint alleges that Nuestra Casa's employees and/or agents: "Serv[ed] intoxicating beverages to defendants, 'JOHN DOE #1-5' when its agents, servants, or employees knew or had reason to know that defendants, 'JOHN DOE #1-5,' had become or were

likely to have become visibly intoxicated and a danger to others, rendering them unable to exercise self-protective care and/or self control[.]"  Ex. A, Count II at ¶ 6(a).

130.    Finally, as described above, the Nautilus Policies contain an endorsement L217 (06/17), "Exclusion – Punitive or Exemplary Damages", which provides that coverage under the Nautilus Policies does not apply to "punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in a similar behavior."  *See* Ex. E, 2022-2023 Policy 037; Ex. F, 2023-2024 Policy 037.

131.    Count I of the Underlying Complaint seeks the imposition of punitive damages. *See* Ex. A, Count I.

132.    As such, no coverage is owed to Nuestra Casa with respect to the allegations contained in the Underlying Complaint under the Nautilus Policies.

133.    Accordingly, in the alternative, Nautilus is entitled to a declaration that it has no duty to defend Nuestra Casa in the Underlying Actions.

**WHEREFORE**, Nautilus respectfully requests that the Court enter an Order:

(a) Declaring that Nautilus has no duty under the Nautilus Policies to defend Nuestra Casa in the Underlying Action;

(b) Declaring that, because Nautilus has no duty to defend Nuestra Casa in the Underlying Action, Nautilus is entitled to withdraw its defense of Nuestra Casa in the Underlying Action; and

(c) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT
**(In the Alternative, Nautilus Has No Duty To Indemnify Nuestra Casa For Any Amounts It May Become Obligated To Pay As A Result Of The Underlying Action)**

134.    Nautilus realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

31

135.   Furthermore, as described above, the Nautilus Policies contain form endorsement S009 (04/16), "Exclusion – Total Liquor Liability", which precludes coverage under the Nautilus Policies for "bodily injury" for which any insured or his indemnitee may be held liable by reason of causing or contributing to the intoxication of any person.  *See* Ex. E, 2022-2023 Policy 066; Ex. F, 2023-2024 Policy 068.

136.   The Underlying Complaint alleges that unknown defendants "indulged in the drinking of alcoholic beverages" and that "[s]aid alcoholic beverages were sold and served" to those unknown defendants "by agents, servants and/or employees of defendant, Nuestra Casa Bar & Restaurant," and that those unknown defendants then assaulted the underlying plaintiffs.  *See* Ex. A at ¶¶ 3-5.

137.   The Underlying Complaint further alleges that Nuestra Casa's employees and/or agents: "Serv[ed] intoxicating beverages to defendants, 'JOHN DOE #1-5' when its agents, servants, or employees knew or had reason to know that defendants, 'JOHN DOE #1-5,' had become or were likely to have become visibly intoxicated and a danger to others, rendering them unable to exercise self-protective care and/or self control[.]"  Ex. A, Count II at ¶ 6(a).

138.   Finally, as described above, the Nautilus Policies contain an endorsement L217 (06/17), "Exclusion – Punitive or Exemplary Damages", which provides that coverage under the Nautilus Policies does not apply to "punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in a similar behavior."  *See* Ex. E, 2022-2023 Policy 037; Ex. F, 2023-2024 Policy 037.

139.   Count I of the Underlying Complaint seeks the imposition of punitive damages.  *See* Ex. A, Count I.

140.    As such, no coverage is owed to Nuestra Casa with respect to the allegations contained in the Underlying Complaint under the Nautilus Policies.

141.    As such, in the alternative, Nautilus has no duty to indemnify Nuestra Casa for any damages it may become obligated to pay as a result of the Underlying Actions.

**WHEREFORE**, Nautilus respectfully requests that the Court enter an Order:

(a) Declaring that Nautilus has no duty under the Nautilus Policies to indemnify Nuestra Casa for any amounts it may become obligated to pay as a result of the Underlying Action, including but not limited to any judgment or settlement therein, including the imposition of punitive damages; and

(b) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Nautilus hereby demands a trial by jury of issues so triable.

Respectfully submitted,
**POST & SCHELL, P.C.**

By:   _/s/ Anthony L. Miscioscia_

Dated:  March 26, 2025

ANTHONY L. MISCIOSCIA, ESQ.
Atty I.D. No. 69215
Three Logan Square
1717 Arch Street, 24th Floor
Philadelphia, PA  19103
Phone: (215) 587-1170
amiscioscia@postschell.com
jbrenner@postschell.com
*Attorneys for Plaintiff Nautilus Insurance Company*