**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY NEWARK DIVISION**

|  |  |
|---|---|
| | § |
| | § |
| NAUTILUS INSURANCE COMPANY, | § Civil Action No.: |
| | § **2:25-CV-02077-MEF-JSA** |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § |
| NUESTRA CASA LLC, | § **RETURN DATE:** |
| et al., | § **July 7, 2025** |
| | § |
| Defendants. | § **ORAL ARGUMENT IS REQUESTED** |
| | § |
| | § |

---

**BRIEF OF DEFENDANTS MIGUEL MULLO QUIROZ AND JHOFFRE LEMA ALLAICA IN SUPPORT OF THEIR MOTION FOR AN ORDER OF THE COURT VACATING DEFAULT AND DISMISSING THIS ACTION**

---

CHRISTOPHER HOWELL, ESQ.
Of Counsel and On the Brief
*Attorney for Defendants,*
*Miguel Mullo Quiroz &*
*Jhoffre Lema Allaica*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                    ii

Preliminary Statement                                   1

Statement of Facts and Procedural History               2

    A. The New Jersey State Court Action           2

    B. The DJ Action                                3

LEGAL ARGUMENT                                          6

    Point I
THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION
UNDER THE DECLARATORY JUDGMENT ACT AND
PERMIT THE STATE-LAW DISPUTES BETWEEN THE
PARTIES TO BE LITIGATED IN STATE COURT                  6

      A. This Court Has Broad Discretion to
        Decline Jurisdiction Over This
        State-Law Coverage Action Under
        the Declaratory Judgment Act            6
      B. The Third Circuit's Decision in
        *Reifer* Supports This Court's
        Declination of Jurisdiction             9

    CONCLUSION                                     17

i

## TABLE OF AUTHORITIES

**CASES:**

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)   8

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800, 818–20 (1976)   7

*Evanston Ins. Co. v. Van Syoc Chartered*,
863 F. Supp. 2d 364 (D.N.J. 2012)   8

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
344 U.S. 237, 241 (1952)   6

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129, 141 (3d Cir. 2014)   8,9,10,11,
                                   12,13,14,15
                                   16

*State Auto Ins. Cos. v. Summy*,
234 F.3d 131 (3d Cir. 2000)   7,8,10,11
                              12,13,14
                              15,16

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)   6,7

**Unpublished Opinions**

*1100 Adams St. Condo. Ass'n v. Mt. Hawley Ins. Co.*,
2014 U.S. Dist. LEXIS 147145
(D.N.J. Oct. 15, 2014) *recommendation adopted*,
2014 U.S. Dist. LEXIS 156505 (D.N.J. Nov. 5, 2014)   8

*AIU Ins. Co. v. K. Hovnanian at Newark Urban Renewal
Corp. III, Inc.*, 2011 U.S. Dist.
LEXIS 45329 (D.N.J. Apr. 27, 2011)   8

*Dellegrippo v. Met Life*,
2007 U.S. Dist. LEXIS 13548, at *7 (D.N.J. Feb. 28, 2007)    13

*Lexington Ins. Co. v. Conve AVS Vega Mesa, LLC*,
2016 U.S. Dist. LEXIS 138843    8

*Nat'l Cas. Co. v. Hertz Equip. Rental Corp.*,
2013 U.S. Dist. LEXIS 71965 (D.N.J. May 21, 2013)    8

*Owen v. Hartford Ins. Co.*, 2014 U.S. Dist.
LEXIS 82172 (D.N.J. June 17, 2014)    8

*United States Liab. Ins. Co., v. Singer*,
2016 U.S. Dist. LEXIS 138814    8

**STATUTES**

28 U.S. C. §2801 *et seq.*    1,4,
4,6

**<u>PRELIMINARY STATEMENT</u>**

This brief is submitted in support of the motion for an Order of this Court vacating default and dismissing the Complaint ("DJ Action") filed by Nautilus Insurance Company ("Nautilus") based upon this court's discretion to decline to exercise jurisdiction for claims under the Declaratory Judgment Act, 28 U.S. C. §2201 *et seq.* ("DJA").

Nautilus seek a declaration for rescission and that it owes no coverage for under the terms and conditions of its General Liability Insurance Policy. All of the claims in Nautilus' Complaint involve issues of state law. There is no federal question presented. All of the claims can be litigated in the pending New Jersey State Court Action, which includes all interested parties. The non-declaratory claims for relief are all singularly related to and dependent upon Nautilus' claims for declaratory relief that it owes no coverage and that it may rescind the insurance policy that it had issued. None of Nautilus' non-declaratory claims are independent as they cannot stand alone in federal court, either jurisdictionally or substantively, without the declaratory claims.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    The New Jersey State Court Action.

On June 11, 2024, defendants Miguel Mullo Quiroz ("Mullo") and Jhoffre Lema Allaica ("Lema"), filed a Complaint against Nuestra Casa Bar & Restaurant ("Nuestra") in the New Jersey Superior Court captioned *Miguel Mullo Quiroz and Jhoffre Lema Allaica v. Nuestra Casa Bar & Restaurant, et al*, Docket No. ESX-L-4013-24 ("New Jersey State Court Action"). See Certification of Christopher Howell, Esq. dated June 11, 2025 ("Howell Certif") at **Exhibit A**.

The Complaint in the New Jersey State Court Action primary allegation are against Nuestra for negligent security; and negligently serving alcoholic beverages to visibly intoxicating patrons rendering them unable to exercise self-protecting care and/or self-control against others. Defendants Mullo and Lema are seeking damages for personal injury as result of defendant, Nuestra's negligence. Nuestra's negligence in failing to provide adequate security as well as serving visibly intoxicated patrons lead to an altercation during DJ entertainment in their establishment, which was a direct and proximate cause of defendants Mullo and Lema's injuries.

Nuestra was served with the Complaint in the New Jersey State Court Action on June 17, 2024. Howell Certif, **Exhibit B**. Nuestra, through separate counsel, filed an Answer on November 25, 2024.

2

Howell Certif, **Exhibit C**.  The action  is still ongoing and is currently in  the  discovery phase of litigation.  There has been no payments or settlement reached in this case by any party.

Plaintiff filed the within Complaint on March 27, 2025.  No defendant has filed an Answer.  As such, plaintiff filed a Request to Enter Default that was entered on June 3, 2025.

**B.   The DJ Action.**

Defendants, Mullo and Lema were not aware Nautilus was attempting to disclaim coverage until the within lawsuit was improperly filed in federal court.  Upon information and belief, Nuestra was also not aware of Nautilus' desire to disclaim coverage because no transmittal letter regarding same was ever provided to defendant Mullo and Lema by Nuestra or their counsel prior to the filing of this lawsuit.

Nautilus' entire Complaint in the DJ Action is essentially and materially one seeking a declaration that it provides no coverage under the terms of its General Liability Policy Number NN1374684, issued to the Nuestra Defendant for the period beginning March 2, 2022 to March 2, 2023.

In its Complaint, Nuestra seeks the following relief:

COUNT I – Rescission Claim for a judgment declaring that Policy NN1374684 is rescinded and deemed void *ab initio*;

COUNT II - Reformation Claim as an alternative to recission to include the "Exclusion - All Assault and Battery" endorsement from the inception of the policy

3

   COUNT III – Declaratory Judgment pursuant to 28 U.S.C. §2201 having no duty to defend defendant Nuestra in the underlying action and <u>declaring</u> that Nautilus' Policy NN1374684 is rescinded in its entirety;

   COUNT IV – Declaratory Judgment pursuant to 28 U.S.C. §2201 having no duty to indemnify defendant Nuestra in the underlying action and <u>declaring</u> that Nautilus' Policy NN1374684 is rescinded in its entirety.

  Clearly, and indisputably, the primary relief sought by Nautilus is a declaration pursuant to the DJA that its insurance policy does not provide coverage and should be rescinded. It should be noted that none of the claims asserted by Nautilus are for damages or costs and thus cannot exceed $75,000, the monetary amount required to invoke this Court's jurisdiction. Instead, Nautilus claims this court has jurisdiction over this matter simply because the underlying policy itself has coverage in excess of $75,000. Nautilus has not paid out any money in the underlying action that could invoke 28 U.S. C. 1332(a)(1) involving a controversy that exceeds the sum or value of $75,000 that would invoke jurisdiction by this Court. Moreover, these claims by their nature, cannot be decided until after it is determined whether or not Nautilus will be successful on the declaratory claims.

  For these reasons, and based upon the legal argument contained herein, this Court should exercise its discretion to

decline hearing this matter and enter an Order of Dismissal[1] so
that the dispute can be determined, in the Superior Court of the
State of New Jersey where all claims can be presented, and all
interested parties can be heard.

---

[1] Pursuant to Local Rule 7.1 (3), a proposed Order is submitted
with the motion papers.

**LEGAL ARGUMENT**

**POINT I**

**This Court Should Decline to Exercise Jurisdiction Under the Declaratory Judgment Act and Permit the State-Law Disputes Between the Parties to be Litigated in State Court.**

**A.    This Court Has Broad Discretion to Decline Jurisdiction Over This State-Law Coverage Action Under the Declaratory Judgment Act.**

Under the plain language of the Declaratory Judgment Act, this Court's jurisdiction to hear the declaratory judgment claims at the core of this action is discretionary: "In a case of actual controversy within its jurisdiction . . . any Court of the United States, upon the filing of an appropriate pleading *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 *U.S.C.* § 2201 (emphasis added). The Act is "'an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). Indeed, this Court enjoys a "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286.

In light of this "unique and substantial discretion," the Supreme Court has reaffirmed that "[i]n the declaratory judgment

6

context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. Whereas, ordinarily, "exceptional circumstances" are necessary to justify a District Court's abdication of its "virtually unflagging obligation" to exercise its jurisdiction, under the Declaratory Judgment Act, there is much more room for a federal court to defer to state courts on issues of purely state law. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–20 (1976); *Wilton*, 515 U.S. at 286 ("Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*."); *United States v. Pa., Dep't of Envt'l Res.*, 923 F.2d 1071, 1074 (3d Cir. 1991) ("The district court's discretion under the Declaratory Judgment Act is significantly greater than under *Colorado River*.").

In deciding whether to decline or exercise declaratory judgment jurisdiction, a court must consider "'whether the questions in controversy between the parties to the federal suit and which [were] not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133

(3d Cir. 2000) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). "The insurance coverage context," which generally involves only purely state-law questions of contract interpretation, "has been particularly fertile ground for exercising and testing the boundaries of—DJA jurisdiction." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 141 (3d Cir. 2014). As the Third Circuit has instructed, "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Summy*, 234 F.3d at 136.

Thus, courts in this District regularly decline to exercise jurisdiction over declaratory judgment actions that raise only state-law insurance coverage issues. *See, e.g.*, *United States Liab. Ins. Co., v. Singer*, 2016 U.S. Dist. LEXIS 138814 (Martinotti, J.); *Lexington Ins. Co. v. Conve AVS Vega Mesa, LLC*, 2016 U.S. Dist. LEXIS 138843 (Linares, J.); *1100 Adams St. Condo. Ass'n v. Mt. Hawley Ins. Co.*, 2014 U.S. Dist. LEXIS 147145 (D.N.J. Oct. 15, 2014) (Arleo, J.), *recommendation adopted*, 2014 U.S. Dist. LEXIS 156505 (D.N.J. Nov. 5, 2014(Wigenton, J.); *Owen v. Hartford Ins. Co.*, 2014 U.S. Dist. LEXIS 82172 (D.N.J. June 17, 2014) (Kugler, J.); *Nat'l Cas. Co. v. Hertz Equip. Rental Corp.*, 2013 U.S. Dist. LEXIS 71965 (D.N.J. May 21, 2013) (Hochberg, J.); *Evanston Ins. Co. v. Van Syoc Chartered*, 863 F. Supp. 2d 364 (D.N.J. 2012) (Simandle, C.J.); *AIU Ins. Co. v. K. Hovnanian at*

*Newark Urban Renewal Corp. III, Inc.*, 2011 U.S. Dist. LEXIS 45329 (D.N.J. Apr. 27, 2011)(Cooper, J.).[2]

**B.    The Third Circuit's Decision in *Reifer* Supports This Court's Declination of Jurisdiction.**

In *Reifer*, the Third Circuit, in holding that a District Court had properly declined to exercise jurisdiction and remanded an insurance coverage action to state court, instructed that "a district court should guide its exercise of sound and reasoned discretion by giving meaningful consideration to" the following eight factors:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

---

[2] Copies of the unpublished opinions are attached as Exhibits D through J to the Howell Certif.

> (8) (in the insurance context), an inherent
> conflict of interest between an insurer's duty
> to defend in a state court and its attempt to
> characterize that suit in federal court as
> falling within the scope of a policy
> exclusion.

*Reifer*, 751 F.3d at 146. Here, all of these factors weigh heavily in favor of declining jurisdiction.

> 1. ***Reifer and Summy require this Court to "step back" and allow New Jersey's state court to decide the question of state law at the center of this action.***

The central question in this action is whether Nautilus' insurance policy covers the negligence claims against the Nuestra Defendant in the New Jersey State Court Action. The Third Circuit in *Reifer,* 751 F.3d at 141, referred to the Third Circuit's prior decision in *Summy*, which held:

> In order to maintain the proper relationship
> between federal and state courts, it is
> important that district courts "step back" and
> allow the state courts the opportunity to
> resolve unsettled state law matters. As
> *Wilton*, reminded us, the Declaratory Judgment
> Act confers a discretion on the courts rather
> than an absolute right on the litigants … It
> follows that the state's interest in resolving
> its own law must not be given short shrift
> simply because one party or, indeed, both
> parties, perceive some advantage in the
> federal forum. When the state law is firmly
> established, there would seem to be even less
> reason for the parties to resort to the federal
> courts.

*Summy*, 234 F.3d at 136 (citation omitted). In *Summy*, the Third Circuit held that the trial court had abused its discretion in

exercising declaratory judgment jurisdiction over an insurance coverage dispute that was also the subject of state litigation.

This action presents only questions of state law. Therefore, as in *Reifer* and *Summy*, this Court should decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act in favor of the parallel New Jersey State Court Action.

> **2.    *The convenience of the parties favors deciding this dispute in the pending New Jersey State Court Action.***

The convenience of the parties also weighs heavily in favor of declining jurisdiction. This federal forum is no more convenient than the state forum for the insurer, who litigates in state court, not just in Essex County but throughout New Jersey, all of the time. On the other hand, the state forum would certainly be more convenient to all the named Defendants who are already in the New Jersey State Court Action, pending before the Superior Court of New Jersey in Essex County.

> **3.    *New Jersey has an overwhelming public interest in deciding this action, which does not implicate any federal issues.***

There is no public interest in having this matter decided by a federal court rather than a state court. As in *Summy*, "[n]ot a single federal question [is] presented" by this Complaint. 234 F.3d at 136.  Instead, the Complaint raises a

question of pure state law that New Jersey's courts are "fully able and prepared to resolve." *Id.* Further, the insureds under the Nautilus policy are a New Jersey business in the bar and restaurant industry. The plaintiffs in the New Jersey State Court Action (the claimants under the insurance policy), are New Jersey residents. There is no doubt that the availability of insurance coverage for New Jersey businesses and citizens is a paramount state interest of New Jersey. This case is all about New Jersey and there is no countervailing federal interest that calls for a decision from a federal court rather than a state court.

> **4.** ***The available remedies are the same—and more inclusive and complete—in state court.***

There are no remedies available in federal court, which are not available in state court. Indeed, the New Jersey State Court Action is more comprehensive because it includes the underlying negligence claims against the insureds as well as could include the insurance coverage claims against Nautilus. Nautilus is able to litigate all of the claims it is asserting in this action, in the New Jersey State Court Action.

> **5.** ***Key factual issues, necessary to the coverage determination, will be decided in the New Jersey State Court Action.***

The factual issues regarding the Nuestra's conduct to wit: liquor sales and DJ entertainment are the subject of the negligence action in the New Jersey State Court.

12

"The Supreme Court and this Circuit have long noted the importance of pending parallel state proceedings as a consideration in a district court's exercise of jurisdictional discretion under the DJA." *Reifer*, 751 F.3d at 143. Although not absolute, "the existence of pending parallel state proceeding militates significantly in favor of declining jurisdiction." *Id.* at 144-45. As the Third Circuit held in *Summy*, when factual issues essential to the coverage determination will necessarily be decided in the underlying state court action, this Court should decline jurisdiction and permit all such inextricably linked issues to be decided in state court. *Summy*, 234 F.3d 135-36; *see also Reifer, 751 F.3d at 141; Dellegrippo v. Met Life*, 2007 U.S. Dist. LEXIS 13548, at *7 (D.N.J. Feb. 28, 2007) [4] (declining to exercise jurisdiction where "there are numerous findings of the [state] trial court … that could affect the coverage determination in this matter and, therefore, a "determination now in the Declaratory Judgment Action would have a hopelessly interfering effect upon the [underlying state-court] Malpractice Action").

The exact same reasoning applies here. The coverage determination in this case will turn on factual determinations. Those factual issues will necessarily be decided in the New

---

[4] A copy of this unpublished opinion is attached as Exhibit P to the Howell Certif.

Jersey State Court Action.  Having the facts addressed by two different courts leads to the risk of inconsistent rulings and duplicative work.  Therefore, as in *Summy*, *Reifer*, and *Dellegrippo*, this Court should apply the "general policy of restraint when the same issues are pending in state court," decline to exercise jurisdiction, and permit all issues relating to these questions of state law to be resolved in the state forum.

### 6.    *The interests of judicial efficiency weigh in favor of declining jurisdiction.*

Having the coverage litigation in New Jersey state court will avoid duplicative litigation, as a single state forum will be better able to manage and coordinate the negligence action and the coverage litigation.  The Third Circuit recognized: "If the District Court had not interfered, the state court would have been able to develop a coordinated schedule of briefing and discovery that would have promoted the efficient resolution of both the declaratory judgment action and the underlying tort action, thereby conserving judicial resources as well as those of the parties."  *Summy*, 234 F.3d at 135-136.  It was "irrelevant" that the state declaratory judgment petition was filed after its counterpart in the District Court.  *Id.* at 136.

7. ***Declining jurisdiction will discourage the "procedural fencing" disapproved by Summy and Reifer.***

Nautilus' conduct in this action is precisely the sort of "procedural fencing" disapproved by *Summy* and *Reifer*. "[T]he state's interest in resolving its own law must not be given short shrift simply because one party . . . perceive[s] some advantage in the federal forum." *Summy*, 234 F.3d at 136. Nautilus has taken a question of pure state law and dragged it into federal court in New Jersey because it believes it has a better chance of success in federal court than in state court. This Court should reject such forum shopping, defer to New Jersey's interest in resolving questions of New Jersey law, and use its discretion to dismiss this matter.

8. ***Nautilus' Denial of its duty to defend the Nuestra Defendant in the New Jersey State Court Action should not weigh strongly in this analysis under the facts presented.***

As *Summy* and *Reifer* noted, there is ordinarily "an inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion." *Reifer*, 751 at 146. Here, Nautilus is attempting to refuse to defend its insureds in the New Jersey State Court Action. Nevertheless, under the circumstances, this factor should not

weigh in favor of exercising jurisdiction and should certainly not be dispositive.

A holding that this factor weighs in favor of exercising federal jurisdiction when the insurer refuses to discharge its duty to defend in the underlying action would encourage insurers to foist jurisdiction over purely state law coverage issues on federal courts by refusing to defend their insureds in the underlying litigation. It would encourage additional denials of coverage by insurers. Such a result would be contrary to the interests both of judicial economy and of protecting the insured when coverage is uncertain. As with the previous factor, this Court should not condone such procedural mischief.

Even if the eighth *Reifer* factor does not weigh, or does not weigh strongly, in favor of declining jurisdiction, the other seven do. This action presents a question of state law that is inextricably linked to factual determinations to be made in a pending state action, which New Jersey's state court is ready, willing, and able to adjudicate, and which implicates absolutely no federal question. Consistent with *Summy* and *Reifer* and the many district court cases that have followed them, this Court should decline to exercise its discretionary jurisdiction under the DJA in favor of having this insurance coverage dispute resolved in the New Jersey State Court Action.

**CONCLUSION**

Based upon the above, it is respectfully submitted that this Court vacate default and exercise its discretion to decline jurisdiction of the DJ Action and enter an Order of Dismissal to avoid judicial inefficiency and prevent inconsistent outcomes.

Respectfully submitted,

*/s/ Christopher Howell*

_____

Christopher Howell, Esq.

Dated: June 11, 2025

17